**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**__ DIVISION**

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Rosalind Alexandria Woods** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| Case number: | **18-04850-5** | | |
| (If known) | | | |

☒ Check if this is an amended plan, and list below the sections of the plan that have been changed.
2, 1

# CHAPTER 13 PLAN

**Part 1:   Notices**

**Definitions:**      Definitions of several terms used in this Plan appear online at https://www.nceb.uscourts.gov/local-forms under the heading "Chapter 13 Plan Definitions." These definitions also are published in the Administrative Guide to Practice and Procedure for the United States Bankruptcy Court for the Eastern District of North Carolina.

**To Debtor(s):**    This form sets out options that may be appropriate in some cases, but the presence of an option on this form does not indicate that the option is appropriate in your circumstances. Plans that do not comply with Local Rules and judicial rulings may not be confirmable.

**To Creditors:**    **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated if the plan is confirmed.** You should read this plan carefully and discuss it with your attorney if you have an attorney in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the United States Bankruptcy Court for the Eastern District of North Carolina ("Court"). **The Court may confirm this plan without further notice if no objection to confirmation is filed.** In addition, you may need to file a timely proof of claim in order to be paid under any confirmed plan.

Only allowed claims will receive a distribution from the Trustee, and all payments made to creditors by the Trustee shall be made in accordance with the Trustee's customary distribution process. When required, pre-confirmation adequate protection payments shall be paid in accordance with Local Rule 3070-1(c). Unless otherwise ordered by the Court, creditors not entitled to adequate protection payment will receive no disbursements from the Trustee until after the plan is confirmed.

The following matters may be of particular importance to you. *Debtors must check one box on each line of §§ 1.1, 1.2, and 1.3, below, to state whether or not the plan includes provisions related to each item listed. If an item is checked "Not Included," or if neither box is checked, or if both boxes are checked, the provision will not be effective, even if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.3, which may result in a secured claim being treated as only partially secured or wholly unsecured. This could result in the secured creditor receiving only partial payment, or no payment | ☐ Included | ■ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.5. | ■ Included | ☐ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | ☐ Included | ■ Not Included |

**Part 2:   Plan Payments and Length of Plan**

**2.1   The Debtor(s) shall make regular payments to the Trustee as follows:**

$ __2,519.00__ per __Month__ for __1__ months
$ __2,830.00__ per __Month__ for __35__ months
$ __1,565.87__ per __Month__ for __24__ months

*(Insert additional line(s), if needed.)*

| Debtor | **Rosalind Alexandria Woods** | Case number | **18-04850-5** |

**2.2 Additional payments.** (*Check one.*)
- ■ **None.** (*If "None" is checked, the rest of this section need not be completed.*)
- ☐ **The Debtor(s) will make additional payment(s) to the Trustee from other sources, as specified below. Describe the source, estimated amount, and date of each anticipated payment.** (*Insert additional rows, if needed.*)

**2.3 The total amount of estimated payments to the Trustee is $    139,149.88   .**

**2.4 Adjustments to the Payment Schedule/Base Plan** (*Check one.*)

- ■ **None.**

- ☐ Confirmation of this plan shall **not** prevent an adjustment to the plan payment schedule or plan base. The Trustee or the Debtor(s) may seek to modify the plan payment schedule and/or plan base within 60 days after the governmental bar date to accommodate secured or priority claims treated in Parts 3 or 4 of this Plan. This provision shall not preclude the Debtor or the Trustee from opposing modification after confirmation on any other basis.

**2.5 Applicable Commitment Period, Projected Disposable Income, and "Liquidation Test."**
The Applicable Commitment Period of the Debtor(s) is **36** months, and the projected disposable income of the Debtor(s), as referenced in 11 U.S.C. § 1325(b)(1)(B), is $  **-2,883.59**   per month. The chapter 7 "liquidation value" of the estate of the Debtor(s), as referenced in 11 U.S.C. § 1325(a)(4), refers to the amount that is estimates to be paid to holders of non-priority unsecured claims. In this case, this amount is $  **15,848.85**  .

**Part 3:  Treatment of Secured Claims**

**3.1 Lien Retention.**
The holder of each allowed secured claim provided for below will retain the lien on the property interest of the Debtor(s) or the estate until the earlier of:
  (a) payment of the underlying debt determined under nonbankruptcy law, or
  (b) discharge of the Debtor(s) under 11 U.S.C. § 1328.

**3.2 Maintenance of Payments and Cure of Default (if any)** (*Check one.*)
- ☐ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*
- ■ The current contractual installment payments will be maintained on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the Trustee ("Conduit") or directly by the Debtor(s), as specified below. Any arrearage listed for a claim below will be paid in full through disbursements by the Trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the Court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) will control over any contrary amounts listed below as to the current installment payment and arrearage. In the absence of a timely filed proof of claim, the amounts stated below are controlling as to the current installment payment and arrearage. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the Court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be paid by the plan.

| Creditor Name | Collateral | Current Installment Payment (including escrow) | Arrears Owed (if any) | Interest Rate on Arrearage (if appliable) |
|---|---|---|---|---|
| **Consumer Portfolio Services** | **2020 Dodge Journey 13777 miles Location: 4219 Cherryhill Lane, Fayetteville NC 28312 VIN 3C4PDCAB2LT249556 Includes payoff of 2015 Acadia.** | **$700.00** To be disbursed by: ☐ Trustee ■ Debtor(s) | **$0.00** | 0.00% |
| **Hendrick Chrysler** | **2019 Jeep Cherokee 25327 miles 1C4PJLCX6KD5353506** | **$512.00** To be disbursed by: ☐ Trustee ■ Debtor(s) | **$0.00** | 0.00% |
| **Xceedinancial Credit Union** | **2015 GMC Acadia 84450.00 miles Location: 4219 Cherryhill Lane, Fayetteville NC 28312** | **$413.07** To be disbursed by: ☐ Trustee ■ Debtor(s) | **$1,522.14** | 10.00% |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | Rosalind Alexandria Woods | | Case number | 18-04850-5 |

| Creditor Name | Collateral | Current Installment Payment (including escrow) | Arrears Owed (if any) | Interest Rate on Arrearage (if appliable) |
| --- | --- | --- | --- | --- |
| Rushmore Loan Management Services | 4219 Cherryhill Lane Fayetteville, NC 28312  Cumberland County Lot 181 in a subdivision known as Blakefield, Phase 1, according to a plat of same being duly recorded in Book of Plats 129, and page 126, Cumberland County Registry, NC | $1,350.00 To be disbursed by: ■ Trustee ☐ Debtor(s) | $5,362.13 | 3.75% |

*Insert additional claims as needed.*

☐ **Other.** *(Check all that apply, and explain.)* The Debtor(s):

   (a) ☐   do intend to seek a mortgage modification with respect to the following loan(s) listed above:

                              _____

   (b) ☐   do not intend to seek mortgage modification with respect to the following loan(s) listed above;

   (c) ☐   intend to: _____

**3.3  Request for Valuation of Security and Modification of Undersecured Claims.** *(Check one)*

   ■   **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

**3.4  Claims Excluded from 11 U.S.C. § 506(a).** *(check one)*

   ■   **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

**3.5  Avoidance of Judicial Liens or Nonpossessory, Nonpurchase-Money Security Interests.** *(Check one)*

   ☐   **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*

---

**The remainder of this Section 3.5 will be effective only if there is a check in the box "Included" in Part 1, § 1.2, of this plan, above.**

---

   ■   The judicial liens or nonpossessory, nonpurchase money security interests securing the claims listed below impair exemptions to which the Debtor(s) would have been entitled under 11 U.S.C. § 522(b), and the Debtor(s) intend to avoid these liens, in whole or in part.  The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full with interest at the *Till* rate to the extent allowed as a secured claim.  The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim under Part 5 of this plan to the extent allowed.

      Procedure to be used for lien avoidance:  Lien avoidance as described in this section may not be accomplished in this district in the absence of the filing and proper service of a motion and notice of motion specifically seeking such relief and giving the affected creditor the opportunity to object to the motion and request a hearing.

| Creditor Name | Property Subject to Lien | Type of Lien ("Judicial" or "NPMSI") | Total Claim Amount | Secured Claim | Unsecured Claim |
| --- | --- | --- | --- | --- | --- |
| Tandon III, LLC | 4219 Cherryhill Lane Fayetteville, NC 28312 Cumberland County Lot 181 in a subdivision known as Blakefield, Phase 1, according to a plat of same being duly recorded in Book of Plats 129, and page 126, Cumberland County Registry, NC | | $28,500.00 | $18,443.17 | $10,056.83 |

*Insert additional claims as needed.*

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Rosalind Alexandria Woods** | Case number | **18-04850-5** |
|---|---|---|---|

**3.6 Surrender of Collateral.** *(Check one.)*

☐ **None.** *If "None" is checked, the rest of § 3.6 need not be completed or reproduced.*

☑ The Debtor(s) will surrender the collateral listed below that secures the creditor's claim. Upon confirmation of the plan, the automatic stay of 11 U.S.C. § 362(a) shall terminate as to the surrendered collateral and any co-debtor stay of 11 U.S.C. § 1301 shall terminate in all respects. No claim for a deficiency remaining due after the disposition of surrendered collateral will be allowed or paid unless the creditor timely files a proof of claim and, within 180 days after confirmation of the plan, amends the claim as necessary to show the remaining unsecured deficiency after the disposition of the surrendered collateral. Absent such timely filing and amendment of a claim, or an order by the Court extending the 180-day filing deadline, the surrender of the collateral shall be deemed in full satisfaction of the Debtor's contractual obligation to the creditor.

| Creditor Name | Collateral |
|---|---|
| Edwards Music Company | Musical Instrument |
| Meridian Financial Services, Inc. | Time share #1 |
| Waterside | Time Share #2 |

*Insert lines for additional creditors and collateral, as needed.*

**Part 4:** **Treatment of Fees and Priority Claims**

**4.1 General Treatment:** Unless otherwise indicated in this Part or in **Part 8, Nonstandard Plan Provisions,** the Trustee's fees and all allowed priority claims, will be paid in full without interest through Trustee disbursements under the plan.

**4.2 Trustee's Fees:** Trustee's fees are governed by statute and orders entered by the Court and may change during the course of the case. The Trustee's fees are estimated to be ___**7.00**___ % of amounts disbursed by the Trustee under the plan and are estimated to total $___**9,740.47**___ .

**4.3 Debtor's Attorney's Fees.** *(Check one, below, as appropriate.)*

☑ Debtor(s)' attorney has agreed to accept as a base fee $___**5,000.00**___, of which $___**396.00**___ was paid prior to filing. The Debtor(s)' attorney requests that the balance of $___**4,604.00**___ be paid through the plan.

☐ The Debtor(s)' attorney intends to apply or has applied to the Court for compensation for services on a "time and expense" basis, as provided in Local Rule 2016-1(a)(7). The attorney estimates that the total amount of compensation that will be sought is $_____, of which $_____ was paid prior to filing. The Debtor(s)' attorney requests that the estimated balance of $_____ be paid through the plan.

**4.4 Domestic Support Obligations ("DSO's").** *(Check all that apply.)*

☑ **None.** *If "None" is checked, the rest of § 4.4 need not be completed or reproduced.*

**4.5 Priority Claims Other than Attorney's Fees and Those Treated in Section 4.4**

☐ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

☑ Section 507(a) priority claims, other than attorney's fees and domestic support obligations are estimated to be as follows:

| Creditor Name | Claim for: | Est. Claim Amt. |
|---|---|---|
| Cumberland County Tax Office | Taxes and certain other debts | $0.00 |
| Internal Revenue Service | Taxes and certain other debts | $0.00 |
| NC Dept. of Revenue | Taxes and certain other debts | $0.00 |

**Part 5:** **Unsecured Non-priority Claims**

**5.1 General Treatment.** After confirmation of a plan, holders of allowed, non-priority unsecured claims that are not specially classified in § 5.2 below, will receive a pro rata distribution with other holders of allowed, non- priority unsecured claims from the higher of either the disposable income of the Debtor(s) over the applicable commitment period or liquidation test (see paragraph 2.5). Payments will commence after payment to the holders of allowed secured, arrearage, unsecured priority, administrative, specially classified unsecured claims, and the Trustee's fees.

Except as may be required by the "disposable income" or "liquidation" tests, or as may otherwise be specifically set forth in this Plan, no specific distribution to general unsecured creditors is guaranteed under this Plan, and the distribution to such creditors may change depending on the valuation of secured claims (including arrears) and/or the amounts which will be paid to holders of priority unsecured claims under this Plan, both of which may differ from the treatment set forth in Parts 3 and 4 of this Plan based on claims filed by secured and priority creditors, or based on further orders of the Court.

**5.2 Co-Debtor and Other Specially Classified Unsecured Claims.** *(Check one.)*

☑ **None.** *If "None" is checked, the rest of Part 5 need not be completed or reproduced.*

**Part 6:** **Executory Contracts and Unexpired Leases**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor    __Rosalind Alexandria Woods__    Case number    __18-04850-5__

**6.1**  **The executory contracts and unexpired leases listed below are to be treated as specified.  All other executory contracts and unexpired leases are rejected.  Allowed claims arising from the rejection of executory contracts or unexpired leases shall be treated as unsecured non-priority claims under Part 5 of this Plan, unless otherwise ordered by the Court. (Check one.)**

■  **None.** *If "None" is checked, the rest of Part 6 need not be completed or reproduced.*

**Part 7:   Miscellaneous Provisions**

**7.1**  **Vesting of Property of the Bankruptcy Estate:** *(Check one.)*
Property of the estate will vest in the Debtor(s) upon:
☐    plan confirmation.
☒    discharge
☐    other: _____

**7.2**  **Possession and Use of Property of the Bankruptcy Estate:** Except as otherwise provided or ordered by the Court, regardless of when property of the estate vests in the Debtor(s), property not surrendered or delivered to the Trustee (such as payments made to the Trustee under the Plan) shall remain in the possession and control of the Debtor(s), and the Trustee shall have no liability arising out of, from, or related to such property or its retention or use by the Debtor(s). The use of property by the Debtor(s) remains subject to the requirements of 11 U.S.C. §§ 363, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

**7.3**  **Rights of the Debtor(s) and Trustee to Object to Claims:** Confirmation of the plan shall not prejudice the right of the Debtor(s) or Trustee to object to any claim.

**7.4**  **Rights of the Debtor(s) and Trustee to Avoid Liens and Recover Transfers:** Confirmation of the plan shall not prejudice any rights the Trustee or Debtor(s) may have to bring actions to avoid liens, or to avoid and recover transfers, under applicable law.

**Part 8:   Nonstandard Plan Provisions**

**8.1**  **Check "None" or List Nonstandard Plan Provisions.**

■    **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

**Part 9:   Signatures**

**9.1**    **Signatures of Debtor(s) and Debtor(s)' Attorney**

**If the Debtor(s) do not have an attorney, the Debtor(s) must sign below, otherwise the Debtor(s) signatures are optional.  The attorney for Debtor(s), if any, must sign below.**

X    __/s/ Rosalind Alexandria Woods__          X    _____
      **Rosalind Alexandria Woods**                            Signature of Debtor 2
      Signature of Debtor 1

      Executed on    _____          Executed on    _____

**By signing and filing this document, the Debtor(s) certify that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in E.D.N.C. Local Form 113, other than any nonstandard provisions included in Part 8.**

X    __/s/ Roger R. Compton__              Date    _____
      **Roger R. Compton**                                          MM/DD/YYYY
      Signature of Attorney for Debtor(s)

**If this document is also signed and filed by an Attorney for Debtor(s), the Attorney also certifies, that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in E.D.N.C. Local Form 113, other than any nonstandard provisions included in Part 8.**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**BUYER**

**VEHICLE BUYER'S ORDER**

Date: 10/04/2021

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| ROSALAND ALEXANDRIA WOODS<br>4219 CHERRY HILL LN<br>FAYETTEVILLE NC 28312<br><br>Email: ROSALIND_WOODS@YAHOO.COM<br>Phone: (910) 670-9088<br>Cell: (910) 670-9088 | N/A<br><br><br>Email: N/A<br>Phone: N/A<br>Cell: N/A | HENDRICK CDJRF WILMINGTON<br>219 S COLLEGE RD<br>WILMINGTON NC 28406<br>CUSTOMER NUMBER:      70424<br>Salesperson: ALEXANDER LUGMAO<br>Deal Number:    5010 |

THIS BUYER'S ORDER IS FOR THE FOLLOWING ☐ NEW ☒ USED ☐ CAR ☒ TRUCK

TO BE DELIVERED ON OR ABOUT  10/04/2021

| Year | Make | Model | Type | Trim | Color | Mileage | Stock # |
|---|---|---|---|---|---|---|---|
| 2020 | DODGE TRUC | JOURNEY | SE VALUE F | SE VALUE | WHITE | 13777 | Z20069-1 |

VIN 3C4PDCAB2LT249556

### TRADE IN RECORD 1

| YR. 2015 | MAKE GMC | MODEL ACADIA | TYPE 4DR LTD FWD |
|---|---|---|---|

| COLOR CARBON BLACK | TRIM SLT | MILEAGE 164287 |
|---|---|---|

VIN 1GKKRRKD0FJ270369

| TITLE NO. | PLATE NO. BCY1221 | EXP. DATE 12/31/2021 |
|---|---|---|

OWNER ROSALAND ALEXANDRIA WOODS    LOAN # 1GKKRRKD0FJ270369

| LIENHOLDER XCEED FINANCIAL C.U. | PHONE |
|---|---|

| ADDRESS | SPOKE WITH |
|---|---|

| AMOUNT 10566.00 | GOOD TILL | VERIFIED BY |
|---|---|---|

### TRADE IN RECORD 2

| YR. N/A | MAKE N/A | MODEL N/A | TYPE N/A |
|---|---|---|---|

| COLOR N/A | TRIM N/A | MILEAGE N/A |
|---|---|---|

VIN N/A

| TITLE NO. N/A | PLATE NO. N/A | EXP. DATE N/A |
|---|---|---|

| OWNER N/A | LOAN # N/A |
|---|---|

| LIENHOLDER N/A | PHONE N/A |
|---|---|

| ADDRESS N/A | SPOKE WITH N/A |
|---|---|

| AMOUNT N/A | GOOD TILL N/A | VERIFIED BY N/A |
|---|---|---|

### COLLISION COVERAGE

| NAME OF AGENT USAA | PHONE (800) 531-8772 |
|---|---|

ADDRESS 9800 FREDERICKSBURG RD
SAN ANTONIO TX 78288

| POLICY NUMBER 024233006R71016 | COLLISION DEDUCTIBLE 500.00 |
|---|---|

| INSURANCE CO. GARRISON PROP AND CAS INS CO | SPOKE WITH |
|---|---|

| EFFECTIVE DATE 10/05/2021 | EXP. DATE 04/05/2022 | VERIFIED BY |
|---|---|---|

**NOTICE PROVIDED IN ACCORDANCE WITH N.C.G.S. 20-101.2**
Seller may receive a fee, commission or other compensation for providing, procuring or arranging financing for the retail purchase of a motor vehicle, for which Buyer may be responsible.

**DEALER ADMINISTRATIVE FEE**
The Dealer Administrative Fee represents Seller costs such as administrative services, notary services, courier expense and cleaning, inspecting and adjusting new and used vehicle inventories as well as additional Seller profit. It is not a government fee.

**NEGATIVE EQUITY**
Buyer is aware the balance owed on Buyer's trade-in exceeds the trade-in allowance offered by Seller. Accordingly, Buyer understands that 2016.00 will be paid off on Buyer's behalf to XCEED FINANCIAL C.U. and this amount is included when computing the "balance due."

| | | |
|---|---|---|
| PRICE OF VEHICLE ➞ | $ | 23590.00 |
| SELLER ACCESSORIES: | | |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| SUB-TOTAL | | 23590.00 |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| TOTAL DELIVERED PRICE | | 23590.00 |
| TRADE-IN ALLOWANCE(S) | | 8550.00 |
| CASH PRICE OR TRADE DIFFERENCE | | 15040.00 |
| | | N/A |
| PLUS: DEALER ADMINISTRATIVE FEE | | 699.00 |
| PLUS: HIGHWAY USE TAX | | 472.17 |
| PLUS: TAG, TITLE, AND REGISTRATION FEE | | 77.50 |
| PLUS: PAYOFF ON TRADE VEHICLE(S) | | 10566.00 |
| N/A | | N/A |
| N/A | | N/A |
| TOTAL BALANCE | $ | 26854.67 |
| SERVICE CONTRACTS | | N/A |
| MAINTENANCE AGREEMENTS | | N/A |
| LESS INITIAL PAYMENT/CASH DOWN | | 700.00 |
| LESS REBATE/FACTORY INCENTIVE | | N/A |
| BALANCE DUE | $ | 26154.67 |

FORM NO. LAWNC-BOARB19_e-CUST (Rev. 9/19)

Buyer Initials _____   Co Buyer Initials N/A   Page 1 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# BUYER

**ADDITIONAL TERMS AND CONDITIONS**

1. These definitions apply to this Agreement:

   *"Buyer"* means the party or parties executing this Agreement as such.
   *"Manufacturer"* means the manufacturer of the Vehicle.
   *"Seller"* means the authorized Seller named on page 1 of this Agreement.
   *"Trade-In"* is the used vehicle that Buyer intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Seller.
   *"Vehicle"* is the vehicle or chassis that is the subject of this Agreement.

2. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to Seller or being manufactured or sold in accordance with Seller orders. If the Manufacturer makes such a change, Seller has no obligation to Buyer to notify Buyer or make the same or any similar change in the Vehicle or its parts either before or after Seller delivers the Vehicle to Buyer. The Manufacturer may change the price of new vehicles without notice. If the Manufacturer changes the price of the new vehicle of the series and body type of the Vehicle before Seller delivers it to Buyer, Seller may change the price of the Vehicle to Buyer accordingly. If Seller changes the price of the Vehicle, Buyer may cancel this Agreement and Seller shall return the Trade-in to Buyer if the Trade-in remains available. Buyer agrees to pay Seller reasonable storage and repair charges. If the Trade-in is unavailable, Seller shall pay Buyer the Trade-in allowance less a sales commission of 15% and any expense in storing, insuring, conditioning or advertising the Trade-in for sale unless prohibited by law.

3. The Trade-in shall be appraised or re-appraised at the time it is delivered to Seller. The appraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Agreement, Buyer may cancel this Agreement. Buyer must exercise Buyer's right to cancel upon a change in the appraised value before Seller delivers the Vehicle to Buyer and Buyer surrenders the Trade-in to Seller.

4. Buyer shall give Seller satisfactory evidence of title to any Trade-in upon delivery to Seller. Buyer warrants any Trade-in to be Buyer's property, free and clear of all liens and encumbrances unless otherwise noted in this Agreement, and that the Trade-in has never had a salvage or "branded" title, been reconstructed, rebuilt, flooded or had major mechanical damage that caused the reconstruction of the Trade-in. Buyer represents that the Trade-in's mileage shown in this Agreement is the actual mileage on the Trade-in. Buyer authorizes Seller to rely on this representation in entering into this Agreement. If Buyer provides false information related to the Trade-in Buyer agrees to repurchase the Trade-in for the full allowance given to Buyer plus all costs incurred by Seller in resolving the matter including but not limited to reconditioning costs, legal fees, court and collection costs. Buyer authorizes Seller to sell the Trade-in without regard to whether the financing contingencies are satisfied as described below.

5. Except as permitted under **Sections 2 or 3** above, if Buyer fails or refuses to accept delivery of the Vehicle or comply with this Agreement, without limiting any other rights Seller may have, Seller may keep as liquidated damages any deposit made by Buyer, to the extent not prohibited by law. Seller may also reimburse itself for any expenses and losses it incurs or suffers as a result of Buyer's failure or refusal to comply with this Agreement, including, without limitation, reasonable attorney's fees. Seller isn't liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond Seller's control or without Seller's fault or negligence.

6. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes (federal, state or local) unless expressly so stated. Buyer agrees to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

7. If this Agreement shows a charge for credit insurance, this paragraph applies. The credit insurance provisions in any retail installment contract Buyer may sign related to this Agreement will apply. If such credit insurance is wholly or partially unavailable under the designated policy, Seller will deduct the applicable part of the credit insurance charge shown in this Agreement and the related finance charge from the total time balance. If such credit insurance does not become effective, Seller will notify Buyer. This Agreement and any related retail installment contract Buyer may sign shall otherwise remain fully effective, to the extent provided by applicable law.

8. Buyer agrees to sign such agreements or documents as Seller may reasonably require to effect the terms and conditions of payment shown in this Agreement and to otherwise carry out the intent of this Agreement.

9. This Agreement is an agreement to buy the Vehicle. If there is a balance due, Buyer's obligation to buy and Seller's obligation to sell the Vehicle are expressly conditioned upon Buyer obtaining financing for the balance due. Buyer has two business days from the date of this Agreement to obtain such financing. If Buyer pays Seller with a check that is dishonored or unpaid for any reason, Seller may, in its sole discretion, declare this Agreement null and void and retake the Vehicle and/or make claims against Buyer on the check. In addition, to the extent permitted by law, Buyer will pay Seller a $35 returned check charge to the extent permitted by law.

10. This paragraph applies if Buyer is buying the vehicle from Seller under the terms of a retail installment contract. Seller agrees to deliver the vehicle to Buyer on the date this Agreement is signed by Seller and Buyer. Buyer understands that it may take a few days for Seller to verify Buyer's credit and assign the retail installment contract. Buyer agrees that if Seller is unable to assign the retail installment contract to any one of the third party finance sources with which Seller regularly does business on the terms as submitted, Seller may cancel this Agreement and the retail installment contract. Seller shall give Buyer written notice (or in any other manner in which actual notice is given to Buyer) within a reasonable period of time of the date this Agreement is signed if Seller elects to cancel. Upon receipt of such notice, Buyer must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to Buyer all consideration received by Seller, including any trade-in in vehicle. If Buyer does not immediately return the vehicle, Buyer shall be liable for all expenses incurred by Seller in taking the vehicle from Buyer, including reasonable attorney's fees. While the vehicle is in Buyer's possession, all terms of this Agreement and the retail installment contract, including those relating to use of the vehicle, shall be in full force, except that liability, collision, and comprehensive insurance on the vehicle shall be provided by Seller's insurance policy until this Agreement and the retail installment contract are no longer subject to rescission under this paragraph. Afterward, the vehicle shall be covered by the Buyer's insurance policy. To the extent not prohibited by law, Buyer must pay all reasonable costs for repair of any damage to the vehicle not covered by Seller's insurance until the vehicle is returned to Seller.

11. Buyer may arrange financing through Seller or a finance source of Buyer's choosing. Buyer may be able to obtain more favorable financing from a third party. Buyer understands the annual percentage rate (APR) quoted by Seller may be negotiable. If this Agreement shows that any part of the transaction is to be financed, Seller may assist in submitting credit applications to third parties, for which Buyer grants permission. Seller will not lend Buyer money or finance this transaction regardless of any notation to the contrary on any document. No agent, employee or manager of Seller may change this policy.

12. In the event that any of the terms and conditions of this Agreement other than those of paragraph 10, above, are inconsistent with the terms and conditions of any retail installment sale contract between Buyer and Seller, the terms of such retail installment sale contract shall apply. Each provision of this Agreement shall be severable from every other provision of the Agreement for the purpose of determining the legal enforceability of any provision hereof.

13. Used Car Buyers Guide. The information you see on the window for this vehicle is part of this contract. Information on the window for overrides any contrary provisions in the contract of sale.

    **Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

14. IT IS BUYER'S RESPONSIBILITY TO OBTAIN INSURANCE ON THE VEHICLE. Seller may request insurance information from Buyer in order to register the Vehicle with the Division of Motor Vehicles (DMV) or for verifying insurance coverage. Seller's request for insurance information does not constitute an agreement to transfer or obtain insurance coverage on the Vehicle. By signing this Agreement, except as otherwise provided in paragraph 10 above, Buyer covenants and agrees that Buyer has obtained or will obtain, before the Vehicle is driven by anyone, insurance on the Vehicle.

15. EACH PARTY HERETO HEREBY IRREVOCABLY, AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY OTHER DOCUMENT RELATED HERETO.

16. You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

FORM NO. LAWNC-BOARB19_e-CUST (Rev. 9/19)   Buyer Initials _____   Co-Buyer Initials **N/A**   Page 3 of 4

MVR-1
(Rev. 05/17)

North Carolina Division of Motor Vehicles
# TITLE APPLICATION

## CHECK Appropriate Block/s (Application cannot be processed without certification of services)

☐ Title Only – Vehicle Not in Operation

☐ Title and License Plate
Class of License _____

☐ Inoperable Vehicle – Vehicle substantially disassembled
and unfit or unsafe to be operated on the highway

☐ Truck Weight Desired _____
(This includes the truck, trailer and load)

☒☐ Plate No. Transferred  **BCY1221 12/31/2021**
(List Plate Number and Expiration)

☐ Limited Registration Plate
(When property taxes are deferred)

For Hire Vehicle
☐ Yes  or ☒No

I certify that all the above information is correct. _____ (Customer's Initials)

## VEHICLE SECTION

| YEAR | MAKE | BODY STYLE | SERIES MODEL | VEHICLE IDENTIFICATION NUMBER | FUEL TYPE | ODOMETER READING |
|------|------|-----------|--------------|-------------------------------|-----------|------------------|
| 2020 | DODGE TR | SE VALUE F | JOURNEY | 3C4PDCAB2LT249556 | GAS | 13777 |

## OWNER SECTION

Owner 1 ID # **5171449**    **ROSALAND ALEXANDRIA WOODS**
Full Legal Name of Owner 1 (First, Middle, Last, Suffix) or Company Name

Owner 2 ID # **N/A**    **N/A**
Full Legal Name of Owner 2 (First, Middle, Last, Suffix) or Company Name

Joint applicants request this title to be issued with Joint Tenants with Rights of Survivorship? Check appropriate block:    Yes ☐    No ☐

Residence Address (Individual) Business Address (Firm)    City and State    Zip Code
**4219 CHERRY HILL LN  FAYETTEVILLE NC 28312**

Mail Address (if different from above)    City and State    Zip Code
**N/A**

Vehicle Location Address (if different from residence address above)    City and State    Zip Code    Tax County
**N/A**    **CUMBERLAND**

## LIEN SECTION

| **FIRST LIEN** | Account # | **SECOND LIEN** | Account # |
|----------------|-----------|-----------------|-----------|
| Date of Lien **10/04/2021** | Maturity Date (MH) | Date of Lien | Maturity Date (MH ) |

Lienholder ID #    Lienholder Name                    Lienholder ID #    Lienholder Name
**35171100**    **CONSUMER PORTFOLIO SERVICES, INC**    **N/A**

Address **PO BOX 57071**    Address **N/A**

City **IRVINE**    State **CA**    Zip Code **92619-7071**    City _____ State _____ Zip Code _____

I certify for the motor vehicle described above that I have financial responsibility as required by law.

**GARRISON PROP AND CAS INS CO**    **024233006R71016**
Insurance Company authorized in N.C.    Policy Number

| Purchased | Purchase Date | From Whom Purchased (Name and Address) | N.C. Dealer No. | Is this vehicle leased? | Equipment # |
|-----------|---------------|----------------------------------------|-----------------|-------------------------|-------------|
| ☐ New ☒☒ Used | 10/04/21 | HENDRICK CDJRF WILMINGTON 219 S COLLEGE RD WILMINGTON NC 28406 | 0079251 | If Yes, Attach Form MVR-330 ☐ Yes ☒☒No | |

## DISCLOSURE SECTION

All motor vehicle records maintained by the North Carolina Division of Motor Vehicles will remain closed for marketing and solicitation unless the block below is checked.
☐ I (We) would like the personal information contained in this application **to be available for disclosure.**

**APPLICATION MUST BE SIGNED IN INK BY EACH OWNER OR AUTHORIZED REPRESENTATIVE OF FIRMS OR CORPORATIONS.**

I (we) am (are) the owner(s) of the vehicle described on this application and request that a North Carolina Certificate of Title be issued. I (we) certify that the information on the application is correct to the best of my (our) knowledge. The vehicle is subject to the liens named and no others. If a registration plate is issued or transferred, I (we) further certify that there has not been a registration plate revocation and that liability insurance is in effect on this vehicle on the date of this application as required by the North Carolina Financial Security Act of 1957.

OWNER'S SIGNATURE _Rosaland Woods_

Date **10/04/2021**    County **NEW HANOVER**    State **NC**

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated. **ROSALAND ALEXANDRIA WOODS** _____ (name(s) of principal(s) ).

Notary
Signature _____    Notary Printed
or Typed Name **GARY W NICOSIA II**

(SEAL)    My Commission Expires **04/12/2022**